Winifred S. Latimer, et al. [1] v. Commissioner. Latimer v. Commissioner
Docket Nos. 61804-61807.
United States Tax Court
T.C. Memo 1960-151; 1960 Tax Ct. Memo LEXIS 138; 19 T.C.M. (CCH) 796; T.C.M. (RIA) 60151; July 13, 1960
*138 Held, petitioners have sustained their burden of proving that certain ranches were individually owned and were not assets of a partnership. Wilson B. Copes, Esq., for the petitioners. J. Earl Gardner, Esq., and John Schessler, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in the income tax of petitioners as follows: Docket
Taxable
Number
Petitioner
Year Ended
Deficiency
61804
Winifred S. Latimer
10/31/50
$26,396.77
10/31/51
22,244.87
61805
Estate of Charles Latimer, Deceased, W. H.
3/ 9/50 to
Latimer and Charles R. Latimer, Executors
2/28/51
26,040.55
61806
W. H. Latimer
10/31/50
498.76
10/31/51
26,502.36
10/31/52
15,501.22
61807
Charles R. Latimer and Ruth H. Latimer
12/31/50
354.14
12/31/51
20,315.48
12/31/52
8,595.75
The parties have stipulated as to every issue in dockets numbered 61804, 61806 and 61807 and the deficiencies therein may be computed from such stipulation. The effect of such stipulation results in deficiencies for the Estate of Charles Latimer, Deceased, Docket No. 61805, for *139 years otherwise barred by the statute of limitations. As to Docket No. 61805, the sole remaining issue is the proper basis for certain properties. The parties agree that a certain partnership was not dissolved by the death of Charles Latimer, Deceased, and pose the sole remaining issue as one of fact, i.e., whether the said properties were assets of the partnership or were owned by its partners, including Charles Latimer, Deceased, as individuals. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. All Federal tax returns for the periods involved herein were filed with the collector of internal revenue for the sixth district of California. During the years 1921 to 1927, inclusive, Charles Latimer, who died on March 8, 1950, and who is hereinafter referred to as the decedent, and his wife, Winifred S. Latimer, who is hereinafter referred to as Winifred, acquired certain citrus fruit ranches, taking title as joint tenants. These ranches, seven in number, are situated in the County of Riverside, State of California, and known as San Jacinto Grove No. 1 to San Jacinto Grove No. 7, inclusive. Hereinafter, the seven San Jacinto groves *140 are referred to as the San Jacinto ranches. The first written articles of partnership for the San Antonio Orchard Company, hereinafter referred to as San Antonio, were written with pencil, in longhand and signed by the decedent and Winifred on December 30, 1926. They are as follows: "Whereas, Charles Latimer and Winifred S. Latimer have during the past years been jointly engaged in the business of ranching, fruit raising and packing of fruits under an oral agreement; it is desired by both parties to reduce the mutual understanding to writing and to enter into a formal Agreement of Partnership, viz: "1. This agreement shall be effective as at January 1, 1925. "2. The partnership shall operate under the fictitious firm name of the San Antonio Orchard Company. "3. Both parties hereby agree to pick, pack and sell all products raised on their separate or joint properties through the business. Any deviation from this practice, unless consented to by the other partner, shall be construed as a breach of contract. "4. Proper books of account shall be kept setting forth in detail all transactions necessary to correctly reflect the profit or loss of the business. Once each year an *141 accounting shall be made at which time each partner shall be credited with his proportion of the profit as hereafter provided. "5. Net profits or losses shall be adjusted equally, provided that before arriving at the amount to be apportioned a salary shall be allowed Charles Latimer as manager of the business. It is agreed that the amount of said salary shall be $4200.00 a year, which amount may be drawn in monthly installments. Any increase in the amount of compensation shall be acquiesced to by the other partner. "6. Each partner shall be entitled to withdraw from time to time against his capital account. Interest at six percent per annum shall be allowed on the excess of one partner's investment over the other, which charge shall be deducted as an expense of the business before arriving at the net profit at the close of each year. "7. The signature of one partner shall be sufficient on all checks drawn on the firm's bank account. "8. The partnership shall exist until mutually dissolved by both parties. "9. In case of the death of either party prior to the dissolution of the partnership, the surviving partner shall account to the representatives of the deceased and thereupon *142 may continue the business under the same firm name. "10. This agreement may be altered in any particular by the mutual consent of both parties. "In witness whereof, we have affixed our signatures the day and year first above written. /s/ Charles Latimer /s/ Winifred S. Latimer Ontario, Calif., Dec. 30/1926" Decedent and Winifred operated under the above articles until January 1, 1931, at which time they signed the following articles which were still in effect at decedent's death on March 8, 1950: "These Articles of Co-Partnership made and entered into this 1st day of January, 1931, between Charles Latimer, of the City of Ontario, County of San Bernardino, State of California, and Winifred S. Latimer, of the same place, WITNESSETH: "That the said parties above named have agreed and by these presents do agree to become co-partners in business together under and by the firm name and style of SAN ANTONIO ORCHARD COMPANY in the business of buying, selling, curing, packing and shipping of fruits of every kind and description, and particularly citrus fruits and grapes, and in packing, shipping and consigning said fruits for others on a commission or brokerage basis, and the *143 buying and selling of packing material and supplies for use in the packing of said fruits, and to do everything proper and necessary in connection with the said buying, selling, curing, packing and shipping of fruits and to maintain a principal place of business on the North side of the Union Pacific right-of-way on South San Antonio Avenue in the City of Ontario, County of San Bernardino, State of California, said partnership activities, however, to include operations in San Bernardino, Riverside, Orange and Los Angeles counties; and to conduct said business as co-partners under the said name SAN ANTONIO ORCHARD COMPANY and to share the profits and losses of said business between said co-partners as follows: "IT IS MUTUALLY AGREED by and between the co-partners for the end and purposes hereinabove set forth and the parties hereto agree that for a period of five (5) years, and thereafter as long as it is mutually agreeable, they will pool their holdings, each providing one-half the necessary capital to be used for the support and management of said business to their mutual benefit and advantage. "IT BEING MUTUALLY AGREED that all of the property of the co-partners while jointly *144 held or while their individual properties in any way are used by or for the co-partnership shall, for the purpose of this agreement, be considered property of the co-partnership; that any property so held by said co-partners which shall be sold during the period of this co-partnership shall, for the purpose of sharing a profit or of adjusting a loss, be considered assets or liabilities of the co-partnership. "IT BEING FURTHER MUTUALLY AGREED by and between said parties that at all times during the continuance of the co-partnership they and each of them will advance the interest of said San Antonio Orchard Company to their and each of their best endeavor and for their joint interest, profit, benefit and advantage, and will buy and sell fruit and packing supplies, particularly citrus fruits and grapes, in the interest of said co-partnership. That they will at all times during their co-partnership bear, pay and discharge equally between them all rents and other expenses that may be required for the support and management of said business and that all gains, profits and increase that shall come, grow or arise from or by means of said business shall be divided between them equally, share *145 and share alike, and all losses that shall happen to their said joint business in said co-partnership by bad debts, poor markets, or otherwise shall be borne and paid equally between them, and there shall be kept at all times during the continuance of their co-partnership perfect, just and true books of accounts, wherein shall be entered and set down as well all money by them received, paid, laid out and expended in and about said business, as also all the commodities and merchandise by them bought or sold by reason of or on account of said business, as well as all other matters and things whatsoever to the said business and management thereof in any wise belonging; which said books shall be used in common between said co-partners so that either of them may have access thereto without interruption or hindrance of the other; and the said co-partners on the 2nd day of January of each year, or as soon thereafter as practicable, during the continuance of said co-partnership, or oftener if necessary, shall make, yield and render each to the other a true, just and perfect inventory and account of all the profits and increase by them or either of them made, and of all losses by them or either *146 of them sustained, and also of all payments, receipts and disbursements and of all other things by them made, received, distributed, acted or suffered in their said business, and the said account being so made they shall and will clear and adjust each to the other at said time the just share of the profits so made, as aforesaid, or the losses so sustained, and at the end of the term herein mentioned or the sooner determination of their co-partnership each to the other shall and will make a true, just and final account of all things relating to said business, and in all things truly adjust the same, that all and every stock and stocks, as well as the gains and increase thereof which shall appear to be remaining, either in money, goods, wares, fixtures, debts or otherwise, shall be divided between them, share and share alike. /s/ CHARLES LATIMER /s/ WINIFRED S. LATIMER" On December 24, 1942, decedent and Winifred entered into an agreement that changed their interest in, and the record title of, the San Jacinto ranches from that of joint tenancy to a tenancy in common, and these ranches were so held, of record, at decedent's death. The decedent and Winifred were among the partners *147 of two other partnerships known as the L Bar S Ranch and the Latimer Ranching Interests. The L Bar S Ranch was in the business of raising agricultural crops and the record title of the partnership's real property used for this purpose was in the partnership name. At all pertinent times San Antonio's books of account reflected the San Jacinto ranches and their equipment as partnership assets. These books also reflected numerous items of property and receipts owned by decedent and Winifred individually, such as dividends and interest from stocks and bonds and, with minor exceptions, their cash withdrawals from other partnerships. These books contained separate income, expense and profit and loss accounts for San Jacinto ranches, the packing house operation and grape commissions, and it is stipulated that all cash receipts from all of the above (grape commissions are not included in this stipulation) went into the general cash fund of San Antonio. The packing house activity was the chief business of San Antonio, and fruit purchases from unrelated, commercial growers were handled on its books in the same manner as fruit purchases from decedent and Winifred. On March 8, 1950, the San *148 Jacinto ranches were the only real properties reflected in San Antonio's books on which agricultural crops were grown, and the crops consisted of citrus fruits. Under San Antonio's accounting procedure for the consecutive periods ending October 30, 1948, October 31, 1949, March 8, 1950, and November 30, 1950, 1951, 1952, and 1953, [2] the "Profit and Loss" account for the San Jacinto ranches and various other accounts, such as "Profit and Loss-Citrus," "Discounts," "Interest Earned," "Contributions," and "General Expense," were closed to a general profit and loss account. This general profit and loss account was in turn closed to the partners' capital accounts. The San Jacinto ranches and the equipment used thereon were reflected on San Antonio's partnership income tax returns for the years prior to March 8, 1950, as assets of this partnership, and the profits or losses from the San Jacinto ranches were included in San Antonio's income. San Antonio's partnership returns filed for the period of March 8, 1950, to November 30, 1950, inclusive, and for the fiscal years *149 ending November 30, 1951 and 1952, [3] also reflected the San Jacinto ranches and the equipment used thereon as assets of San Antonio. A "recapitulation" of income was attached to, and made a part of, these three last mentioned returns, which "recapitulation" included the profits or losses from the San Jacinto ranches, the partnership's packing house and a stable of race horses owned by decedent. A balance sheet in an audit report of San Antonio, dated as of March 8, 1950, and prepared by the same accountant who kept its books and prepared its tax returns, listed its fixed assets and investments as follows: Fixed Assets
Investments
San Jacinto Ranches
Latimer Ranching Interests
Automobiles
L Bar S Ranch
Furniture and Fixtures
L Bar S Life Tenancy
Ranch Equipment
Corporation Stocks
Trucks and Trailers
Bonds
Packing House Property
Racing Stable
Other Real Estate Part of the packing house property consisted of land that was owned by the partnership, and the "Other Real Estate" included one of decedent's residences. [4]
Pursuant to *150 the advice of a "tax advisor," who was not an attorney and whose qualifications are not disclosed of record, Wilbur H. Latimer, one of decedent's sons and acting in his capacity as co-administrator of his father's estate, wrote the Commissioner of Internal Revenue on November 1, 1950. The language of this letter was prepared by the "tax advisor" in collaboration with the accountant who had handled San Antonio's books. The letter stated, in part, as follows: "November 1, 1950 "Commissioner of Internal Revenue Treasury Department, Washington 25, D.C.
"Attention: IR:P:TR "Sir: "An opinion is respectfully requested from your office relative to the basis to be used by a partnership for computing depreciation, valuation of assets, and length of life of depreciable assets. "The following facts are recited that you will be properly appraised of the underlying facts. The writer is co-administrator of our father's estate, who passed away March 8, 1950. Father and mother were equal partners in extensive real and petional property, consisting primarily of citrus groves. The partnership had been made in January 1, 1925, and had successfully stood numerous inquiries from Internal Revenue *151 Agents, so that its validity is unquestioned. The will provides that our father's estate shall be divided equally between the two sons. The business, of course, is continuing on as a partnership between our mother and the estate of our father. Upon closing the estate, the business will then be operated as a partnership between our mother and each of us two brothers." The attorney who prepared decedent's Federal estate tax return and who handled decedent's estate in the California probate court, was advised by a local title company that it would recognize an estate inventory showing the San Jacinto ranches as the partnership assets of San Antonio. Decedent's Federal estate tax return, dated June 6, 1951, contained the following description of the property owned by the decedent at the time of his death: "Decedent owned an undivided 1/6 interest in Latimer Ranch partnership. Decedent also owned an undivided 1/5 interest in L Bar S Ranch partnership. In addition, decedent owned a life interest in one-half of the one-fifth interest in L Bar S Ranch of his late son, John S. Latimer. Public accountants audit reports are submitted herewith which we believe accurately describe the interest *152 of decedent in the two above mentioned partnerships. "In addition, decedent owned an undivided 1/2 interest in San Antonio Orchard Company partnership. Decedent's interests in Latimer Ranch partnership and L Bar S Ranch partnership are reflected on the books of San Antonio Orchard Company and on the audit report of said San Antonio Orchard Company which is furnished herewith. All of the decedent's property was held in one or the other of said three partnerships. * * *" On or about April 29, 1954, an inventory and appraisement was filed for the decedent's estate in the Superior Court of the State of California, in and for the County of San Bernardino, which stated, in part, as follows: "INVENTORY "ESTATE OF CHAS. LATIMER, DECEASED "Undivided one-half interest in San Antonio Orchard Company, a co-partnership consisting of Chas. Latimer and Winifred S. Latimer, his wife. "NOTE: The assets of said co-partnership consisted of the following, to-wit: "(1) All of the right, title and interest in and to all of the parcels of real property and shares of water stock and other personal property described in Exhibit '1' attached hereto and hereby made a part hereof (For convenience, *153 because the real and personal property described in paragraphs 1-12, both inclusive, of said Exhibit '1', stands of record in the names of the decedent and Winifred S. Latimer, his wife, as to each an undivided one-half interest, only the record one-half interest of the decedent therein is described in said Exhibit '1', which record interest is properly distributable to the residuary devisees and legatees under the last will and testament of said decedent). * * *
"(4) All of the right, title and interest in and to the shares of capital stock described in paragraphs 1-26, both inclusive, of Exhibit '4' hereto attached and hereby made a part hereof (As shown in said Exhibit '4', certain of said shares of stock stood in the name of the decedent alone; some were held in the names of the decedent and Winifred S. Latimer, his wife; and some were in the hands of stock-brokers at the date of his death and upon the later issuance of certificates therefor the same were issued in the names of the executors herein; however, all of said shares were assets of said San Antonio Orchard Company, a co-partnership)." In the Order Settling Final Account and Decree of Distribution entered by the *154 Superior Court of the State of California in the Matter of the Estate of Chas. Latimer, Deceased, the decedent's interest in the San Jacinto ranches and their machinery and equipment was specifically distributed to the decedent's devisees. It was never the intention of decedent and Winifred to contribute the San Jacinto ranches or their equipment to the capital of the San Antonio partnership, and this was never done. San Antonio's books were in fact personal account books for decedent and Winifred as well as partnership books. The San Jacinto ranches and the equipment used thereon were individually owned on March 8, 1950, and were not assets of San Antonio. Opinion Decisions in dockets numbered 61804, 61806 and 61807 will be entered in accordance with the stipulation. The parties state that the sole remaining issue in Docket No. 61805 is one of fact, to wit, whether the San Jacinto ranches and equipment used thereon constituted assets of San Antonio, or were owned by decedent and his wife in their individual capacities, in which latter event the parties agree that the portion owned by decedent acquired a new and increased basis for the purpose of his estate, the amount *155 of which is also agreed to, at decedent's death. We are not convinced that the parties are correct in taking the position that San Antonio was not dissolved by decedent's death. Its articles do not seem to preclude dissolution and the California Corporations Code provides, inter alia, (section 15031(4)) that the death of a partner dissolves the partnership. However, in view of our determination of the fact issue as posed by the parties we do not reach this legal issue. We feel that the question of ownership of the assets in question is a close one and we have carefully considered the entire record in making our determination, attaching such weight as we felt was justified to each element of testimony and evidence. The accountant who kept San Antonio's books and prepared its tax returns was a witness for petitioners. We are satisfied that said books and returns were kept and made honestly but in a haphazard and inaccurate manner. The accountant considered that, since decedent and Winifred owned the entire partnership, anything owned by either of them could be reflected on its books and returns, i.e., stocks and bonds, a racing stable, their interests in other partnerships and *156 other assets admittedly having no possible connection with San Antonio. However, the recapitulation of income attached to these returns carefully kept separate the income from the various sources. It is significant that the preamble to the 1926 articles refers to ranching and fruit raising "during the past years" then omits both from the enumeration of future undertakings. Both are also omitted from the more formal 1931 articles and we are not persuaded by respondent's arguments based upon the provision: "* * * individual properties * * * used by or for the co-partnership shall, for the purpose of this agreement, be considered property of the co-partnership;" for those arguments beg the very question to be decided. Nor is respondent's argument that the change in record title from joint tenancy to tenancy in common was a part of the implementation of a plan to contribute the ranches to San Antonio, determinative. That change in record title was made in December 1942, 12 years after adoption of the January 1931 articles. It is also significant that another partnership in which both decedent and Winifred had interests, together with others, did hold record title to realty in *157 the partnership name. This circumstance adds weight to the manner in which record title to the San Jacinto ranches was held. Some phases of the handling of decedent's estate indicate ownership of the ranches and equipment by San Antonio and partial ownership of San Antonio in turn by decedent, but the Superior Court's Decree of Final Distribution, under which title actually passed to the distributees, is otherwise. Lastly, Winifred, the only witness able to testify directly to the precise question for decision, stated unequivocally that it was never her intention nor the intention of decedent to contribute the San Jacinto ranches and equipment to the partnership. It is our conclusion, as is indicated in our findings, that the San Jacinto ranches and their equipment were, at all relevant times, individually owned by decedent and Winifred, and were not assets of San Antonio. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Charles Latimer, Deceased, W. H. Latimer and Charles R. Latimer, Executors, Docket No. 61805; W. H. Latimer, Docket No. 61806; and Charles R. Latimer and Ruth H. Latimer, Docket No. 61807.↩
2. The books for San Antonio covering periods other than those set forth here, were not introduced into evidence.↩
3. Returns for other periods were not introduced into evidence.↩
4. No depreciation was taken on the residence.↩